**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

|  |  |  |
|---|---|---|
| CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON SUBSCRIBING TO POLICY #B1230AP56189A16, as subrogee of Wyndham Worldwide and King Street Metroplace POA, Inc., <br><br> and <br><br> KING STREET METROPLACE POA, INC., <br><br> *Plaintiffs,* <br> v. <br><br> ROTO-ROOTER SERVICES COMPANY, d/b/a Doto-Rooter <br> *Defendant.* | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 1:20-cv-1051 <br> Hon. Liam O'Grady |

## ORDER

Before the Court is the Defendant's motion to dismiss Count I ("Negligence") of Plaintiff's First Amended Complaint ("FAC") pursuant to Rule 12(b)(6). Dkt. 13. For the reasons set forth below, the Defendant's motion is **DENIED**.

## I. BACKGROUND

The loss in question arises from damage to a resort property owned by Plaintiffs Wyndham Worldwide and King Street Metroplace POA, Inc. ("Wyndham") and insured by Plaintiff Certain Underwriters at Lloyd's of London ("Lloyd's).

Wyndham contracted with Defendant Roto-Rooter Services Company ("Roto-Rooter") to remediate a blockage in Wyndham's sanitation system (the "vent stack") at the resort. Dkt. 8, at

2, ¶ 6. The scope of this remedial work was limited to the vent stack, and did not extend to any other portions of the resort property. *Id.* at 3, ¶ 9.

Plaintiffs allege that on August 15, 2016, while Roto-Rooter was working on the vent stack, one of its employees "negligently damaged" a portion of the nearby fire system. *Id.* at 3, ¶ 12. Plaintiffs explain that the fire system was properly installed and functioning prior to this damage. *See id.* at 3, ¶¶ 13, 15. Nonetheless, they allege that it "broke due to an external stress placed on the system by [Roto-Rooter's employee]." *Id.* at 3, ¶ 14. As a result of the break, Wyndham suffered a loss of $1,391,410.65 in damages, and "additional uninsured losses, including a $10,000.00 deductible." *Id.* at 3, ¶ 16. Wyndham submitted a claim to its insurer, Lloyds, which paid the claim and was "subrogated to the rights of the Insured against Defendant" as a result. Dkt. 8, at 4, ¶¶ 17–18.

Plaintiffs sued Roto-Rooter in the Circuit Court for the City of Alexandria on July 13, 2020, seeking negligence and breach of contract damages. Dkt. 1-1, at 5, 7–10. Defendant was served on August 19, 2020, Dkt. 1-1, at 2, and then filed a notice of removal to this Court on September 8, 2020 under 28 U.S.C. §§ 1441, 1446 on the basis of diversity jurisdiction, 28 U.S.C. § 1332.

## II. LEGAL STANDARD

On a motion to dismiss, a Court evaluates a Plaintiff's claims under *Twombly-Iqbal*'s plausibility standard. *See Ashcroft v. Iqbal*, 566 U.S. 662, 678–79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Under this standard, the Court accepts as true the claimant's well-pleaded allegations, and it views the complaint in the light most favorable to the non-movant. *T.G. Slater & Son, Inc. v. Donald P. and Patricia Brennan LLC*, 385 F.3d 836, 841 (4th Cir. 2004). However, the claimant must provide more than merely "labels and conclusions"

or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Instead, it must "allege facts sufficient to raise a right to relief above the speculative level, stating a claim that is plausible on its face, rather than merely conceivable." *Vuyyuru v. Wells Fargo Bank, N.A.*, 2016 WL 356087, at *2 (E.D. Va. Jan. 28, 2016) (citing *Iqbal*, 556 U.S. at 678). The Court may therefore dismiss a claim under Rule 12(b)(6) if it finds that there are no facts alleged that could plausibly entitle the Plaintiff to relief.

## III. DISCUSSION

Defendant seeks to dismiss only Plaintiffs' negligence claim. *See* Dkt. 14. Defendant's sole argument in support of dismissal is that the Plaintiffs cannot maintain an action against Defendant for both breach of contract and negligence under Virginia's economic loss rule. *Id.* at 3 ("The economic loss rule prevents plaintiffs from brining [sic] a claim in tort when the alleged wrongdoing arises from the parties' contract.") (citing *Sensenbrenner v. Rust, Orling & Neale, Architects, Inc.*, 236 Va. 419, 425 (1988)). The Court disagrees.

Specifically, Defendant is incorrect to assert that the Plaintiffs have suffered a "purely economic loss." Dkt. 14, at 4. Under Virginia law, a loss is "purely economic" only when it results from a Defendant's failure to fulfill a contractual duty. *See Filak v. George*, 594 S.E.2d 610, 613 (Va. 2004). That is why Virginia courts have described purely economic losses as "nothing more than disappointed economic expectations assumed only by agreement." *See id.* at 618. Casting "pure economic losses" as "disappointed economic expectations" harmonizes with the "controlling policy consideration of the law of contract" in Virginia, which is the "protection of expectations bargained for." *Sensenbrenner v. Rust, Orling & Neale, Architects, Inc.*, 374 S.E.2d 55, 58 (Va. 1988). This policy consideration explains the numerous Virginia state court

3

cases that have dismissed negligence claims asserted in conjunction with contract claims.[1] *See*

*Gonella v. Lumbermens Mut. Cas. Co.*, 2004 WL 836031, at *4 (Va. Cir. Ct. 2004) ("The

Supreme Court of Virginia has, in fact, rejected claims sounding in negligence for economic

losses resulting from breaches of duties among parties whose relationships were founded in

contract. . . . In each of these cases, however, the losses asserted were solely economic in nature

and no duty beyond a duty to perform according to the contract was adequately asserted or

supported by the claims of the plaintiffs.").

*Sensenbrenner*'s exposition on the policy underpinning Virginia tort law makes clear that

losses are not "purely economic" when they take the form of injuries to property not within the

scope of a contract. This so-called "other-property exception" implicates tort law, and is well-

recognized by the Virginia Supreme Court:

> In *Sensenbrenner*, we noted that the economic-loss rule in most jurisdictions permits tort recovery when the negligent actions resulted in damage to "property *other than the product itself*." A strong consensus supports this other-property exception to the economic-loss rule.

*Tingler v. Graystone Homes, Inc.*, 834 S.E.2d 244, 266 (Va. 2019) (citing *Sensenbrenner*, 374

S.E.2d at 55; *Saratoga Fishing Co. v. J.M. Martinac & Co.*, 520 U.S. 875, 881, 884-85 (1997);

*2-J Corp. v. Tice*, 126 F.3d 539, 544 (3d Cir. 1997); *Marshall v. Wellcraft Marine, Inc.*, 103 F.

Supp. 2d 1099, 1111 (S.D. Ind. 1999)). In the recent case of *Tingler*, the Virginia Supreme

Court applied the "other-property exception" to allow a homeowner to sue in contract *and* tort

---

[1] *See, e.g., Gerald M. Moore and Son, Inc. v. Drewry*, 467 S.E.2d 811 (Va. 1996) (upholding denial of recovery in tort for alleged design and engineering defects in a furnace built under contract); *William Ward v. Ernst & Young*, 435 S.E.2d 628 (Va. 1993) (affirming denial of recovery by a shareholder for alleged substandard professional services rendered by an accountant resulting in disappointed economic expectations); *Copenhaver v. Rogers*, 384 S.E.2d 593 (Va. 1989); *Rotunda Cond. Owners v. Rotonda Assoc.*, 380 S.E.2d 876 (Va. 1989); *Sensenbrenner*, 374 S.E.2d at 55 (affirming denial of a landowner's negligence claim against an architect and swimming pool subcontractor for damage to the landowner's home from alleged negligent design and installation of swimming pool).

4

for "damage to personal property caused by . . . misfeasance during [contracting work.]" *See Tingler*, 834 S.E.2d at 265–66.

Lower Virginia state courts have also recognized the viability of contract and tort claims brought concurrently where tort damages have occurred to "other property" not within the scope of a contract. In *East Virginia Bank Shares, Inc v. PPI Dissolution Company*, a Plaintiff sued "for property damage suffered on two occasions when [an] uninterrupted power supply battery cabinet ("UPS") located in [the Plaintiff's operation center] emitted smoke causing the building's fire suppression system to go off." *See* 2013 WL 12415225, at *1 (Va. Cir. Ct. 2013). Finding that the Plaintiff was seeking redress "for damage to property *other than the UPS itself*," the Court allowed the negligence claim to proceed in addition to a contract claim, notwithstanding the Defendant's "economic loss rule" objection. *See id.* at *5–6 (emphasis added); *see also Snead v. Ford Motor Co.*, 1998 WL 34180228, at *2 (Va. Cir. Ct. 1998); *Commonwealth Park Suites Hotel v. Armada/Heffler Const. Co.*, 1994 WL 1031342, at *3 (Va. Cir. Ct. 1994).

Here, there can be no question that Wyndham's fire suppression system was "other property" unrelated to the remediation of the vent stack. The vent stack and the fire suppression system were not both part of a "package deal" between Plaintiffs and the Defendant. *See Sensenbrenner*, 374 S.E.2d at 58 ("The plaintiffs here allege nothing more than disappointed economic expectations. They contracted with a builder for the purchase of a package."); *see also East Virginia Bank Shares, Inc.*, 2013 WL 12415225, at *5. In fact, "Defendant was not hired to perform *any* work on the Fire System at the Resort." Dkt. 8, at 3, ¶ 10 (emphasis added). The vent stack was not integrated with the fire suppression system. It just happened to be "[i]n the same room where Defendant was performing work on the Vent Stack." *Id.* at 3, ¶ 11. The fire

5

suppression system, and the damage resulting from its rupture, constitutes "other property" not within the scope of the parties' bargained-for contract.

Even so, for Plaintiffs' negligence claim to be viable, it must assert the breach of some common law or statutory duty owed to them by Defendant, and "not one existing between the parties solely by virtue of the contract." *Richmond Metropolitan Authority v. McDevitt Street Bovis, Inc.*, 507 S.E.2d 344, 347 (1998) (citing *Spence v. Norfolk & W.R.R. Co.*, 22 S.E. 815, 818 (1895)); *see also Filak v. George*, 594 S.E.2d 610, 614 (2004) ("The law of torts provides redress only for the violation of certain common law and statutory duties involving the safety of persons and property.") (citing *Ward*, 435 S.E.2d 628, 631 (1993)).

Plaintiffs creatively cite to Va. Code. § 8.01-42.2 for the proposition that Roto-Rooter owed a statutory duty as a "registered guest" of the resort. *See* Dkt. 16, at 5–6. This argument is untenable, but the Court finds ample support that licensees and other entities on or near a property have a duty to act reasonably, and to not cause damage thereto. *See, e.g., Gonella*, 2004 WL 836031, at *6; *Commonwealth Park Suites Hotel*, 1994 WL 1031342, at *4; *Rogers v. Dow Agrosciencses, LLC*, 2006 WL 3147393, at *2 (W.D. Va. Oct. 31, 2006). This is true notwithstanding *Sensenbrenner*'s obiter dicta that contractors do not assume a duty to "take care for . . . the property of another." 374 S.E.2d at 58. There is little doubt that subsequent Virginia state court opinions have abrogated this dicta and any legal force it carries. *See, e.g., Gonella*, 2004 WL 836031, at *6 ("Inherent in the Plaintiffs' claim . . . is an assertion that when an agent for [Defendant] performed repair work on the Plaintiffs' townhouse, a duty existed to perform such work without creating an unreasonably dangerous condition on Plaintiffs' property, a duty akin to the independent duty of the landlord . . . . This duty exists apart from expectations associated with the Plaintiffs' contract with [Defendant]."); *Commonwealth Park Suites Hotel*,

6

1994 WL 1031342, at *4 ("[W]here personal injury is threatened, a duty in negligence has been readily found. Property interests also have generally been found to merit protection from physical harm."); *see also Blake Const. Co. v. Alley*, 353 S.E.2d 724, 726 (1987) (pre-dating *Sensenbrenner*) (citing *Crowder v. Vandendeal*, 564 S.W.2d 879, 882 (Mo. 1978)) (same).

## IV. CONCLUSION

The Court finds that Plaintiffs may seek tort damages for the injuries they suffered under the "other property" exception to the economic loss rule. *See Tingler*, 834 S.E.2d at 265–66; *see also East Virginia Bank Shares*, 2013 WL 12415225, at *1; *Gonella*, 2004 WL 836031, at *4; *Snead*, 1998 WL 34180228, at *3; *Commonwealth Park Suites Hotel*, 1994 WL 1031342, at *3. Plaintiffs may also seek expectation damages stemming from Roto-Rooter's failure to remediate the damage to the vent stack system. However, Plaintiffs may not doubly recover $1,391,410.65 under a breach of contract theory based on Roto-Rooter's alleged rupture of the fire suppression system. *See* Dkt. 8, at 7. That is because the viability of Plaintiffs' negligence claim necessarily requires that the loss at issue stemmed from Defendant's breach of a duty "not existing between the parties solely by virtue of the contract." *Richmond Metropolitan Authority*, 507 S.E.2d at 347.

Accordingly, Defendant's motion to dismiss Count I ("negligence") of the complaint is **DENIED.**

It is **SO ORDERED.**

November 3, 2020
Alexandria, Virginia

Liam O'Grady
United States District Judge

7